Case 23-2322, Northern District of Iowa, Devin Nunes et al. v. Ryan Lizza et al. All right, Mr. Bonnell, we'll hear from you first. May it please the Court. Jesse Bonnell on behalf of the appellants, and I will endeavor to reserve three minutes for rebuttal. You may, but the clock will continue to run, so you'll have to stop on your own if you wish to reserve. I understand, Your Honor. This case is back before the Court largely because the District Court fell into the appellee's invitation to disregard this Court's clear rulings from a previous appeal in this same case. Indeed, this Court previously held that a publication of a hyperlink, along with language that encouraged readers to pursue the author's strange tale about immigration policy and promoting that I've got a story for you, was enough to state a claim for republication. Here, there is no debate that the same language was in the summary judgment record. It clearly is. Indeed, the District Court held that the use of that language, after Mr. Nunes had sent a retraction demand and filed his original lawsuit, was sufficient to show that there was a material fact in dispute as to the question of actual malice. Incredibly, the District Court still said that there was no republication under California law. The primary case relied upon for this contention, however, is Penrose Hill, a California District Court case that is not nearly as expansive as appellees wish it were. Indeed, the Court in Penrose Hill embarked on a very similar analysis as this Court did and actually arrived... Can you say that case name again for me? It's the Penrose Hill case, Your Honor. It's from the Northern District of California, and it's where the District Court... I don't see it in your table of authorities. Your Honor, I will get you a citation for it when I stand back up for rebuttal, if that's helpful. You may find it in the appellee's table of authorities as well, because it's the case that they relied upon. Your Honors, the Penrose Hill case embarks on a very similar analysis as this Court embarked upon in its prior decision. And it actually came to a very similar result. Specifically, it held that while publication of a hyperlink to a social media post itself is insufficient to show republication, the body of the post itself, for a social media post, can result in republication. Well, the Federal District Court decision isn't controlling on California law. That's absolutely correct, Your Honor. So, why are you talking about a Federal case they like that's not controlling? Because, Your Honor, that's the best they have for what they rely upon. What do you rely on that California law is not what the District Court is? Your Honor, there is no other case law in California that's authoritative on this question. And so, the best authority on this question, California, to our knowledge, hasn't done anything to distinguish itself on this republication issue from this Court's decision in the first Nunes case. While there may be some differences, for instance, in the Penrose Hill case, in fact, it has the fact that it's not published in the fourth edition of the Federal Reporter, like this Court's case is. This Court's case, in the first Nunes case, is not only the law of the case, but it's the law of this circuit. And so, when you look at California law for their argument that somehow the law is different than what it would be in Iowa, you come up empty. Now, wait, you're saying Nunes 1 is binding on our panel? Yes, Your Honor. Nunes 1 would be binding on your panel. Well, this is the same case. It is the same case. We have a second panel hearing a continuation of the same case. Why does the law of the case apply here? Your Honor, it's – I – You know, I understand the argument, but you're overstating all of these things, which is – Your Honor, I don't mean to overstate. Regardless of whether or not it's the law of the case, it's the law of this circuit. Well, no, it's – yes, it would be in the next case, but this is a continuation of this case. It's a continuation of this case. It's something that this Court has already decided. Mr. Colleton was the author of that opinion. He's on this panel. You're saying he's bound by what he wrote before in the same case? Your Honor, I'm saying that there's certainly, if nothing else, because I don't want to overstate it, there's no reason to depart from what Chief Judge Colleton already wrote. What he wrote was right. What he wrote was supported by logic. But I don't think he was calling it out California. He was applying Iowa law, right? He was. I mean, well, let's look at the analysis that the Nunez-Wan case did in that case. And while it was a question of Iowa law, what Chief Judge Colleton did in Nunez-Wan is did a survey of the way that other courts all over the country have dealt with this case. It is a very similar analysis from what courts in other circuits have also done. And, in fact, for instance, the Penrose Hill case. Not trying to tie it to some specific amorphous detail in Iowa law, but trying to determine what the law is on the issue of republication. And so while looking at all those different cases, the court came to the right decision, which is a republication. When you put a hyperlink out to a social media site and you include more text, trying to gain a new audience, trying to, you know, it's been referred to as click bait, try to increase the amount of traffic, people that have not already seen that article going back to that article. That is a republication. And there's nothing in California law that would make it any different than what Chief Judge Colleton decided in Nunez-Wan. It was a panel, really, not just one judge. Of course, Your Honor. Of course. Which is, you know, why I'll stick to saying what this court decided. Even though it's a slightly different panel, what this court decided was the right decision in Nunez-Wan. And there's no reason to depart from it here. And there's, of course, no reason to think that there was any forfeiture or waiver on that issue as well, because what prior counsel in this case did at the district court level is pointed out to the court that this court had already decided this issue and that there was no reason to depart from it. That is perfectly acceptable under those circumstances. The issue is fully litigated. There's no reason to find otherwise. Can I ask you a question? Yes, Your Honor. This is, I guess, for clarification, really, as to what's gone on in the case and then what was the findings below. But I made a note here that, and it's a statement. I want you to tell me whether this is an accurate statement. And the statement is this, that there is no genuine dispute of material fact that it is substantially true that Newstar used undocumented labor. I believe the summary judgment record did show that there was undocumented labor. But there's some important differences there, Your Honor. And number one, the phrase at issue is knowingly. And why that's so important is because there are federal laws that govern how you can ask somebody about their legal status. If a farm would have just simply gone to people based on the language they spoke, the color of their skin, anything else like that, and tried to get more specific on whether or not they had legal status, they could have been sued. They could have theoretically been prosecuted. You cannot do that. And so, as a result, the question is whether they knowingly hired anyone or whether they used best efforts to avoid it. There's a dispute as to the state of mind. Yes, Your Honor. I thought there was knowledge that employees were using fake ID cards. Your Honor, there's not. That's something that is in dispute. That is something where they may try to make that argument to the jury about whether that was knowledgeable. But the evidence will be to the contrary. All right. Cite me to the contrary evidence so I can check. The contrary evidence, for instance, is the depositions of the witnesses. Well, cites. I mean, this is not a tiny record. You're asking me to go through it like I'm looking through. I understand, Your Honor. We had tried to make the record smaller than it is. It's important to understand that prior counsel in this case wrote the brief in this case and then immediately had a stroke in his head. I thought that there was evidence that the employers received back information that the numbers and the names didn't match and so forth. Is that undisputed? When you go back and look at it, there is some evidence in the record that there was some disconnect there afterwards. If a full search could have been done at that point, yes, there was some evidence looking backwards. But there is not any evidence that when they hired someone looking forwards that they knew someone was an unlawful immigrant, which is why it's so important for the New Star plaintiffs that the keyword here is knowing. What do you mean looking backwards? I mean, doesn't the process work that you take the information from the prospective employee or the new employee and you submit it to the government? Correct. And then you get back something from the government that says there is no such person on file. And your position is at that point they didn't have knowledge? We're saying that at that point, at the point they actually hired someone, the point that they hired anyone. We're not retaining them after receiving the notice. And this applies only to the New Star plaintiffs, Your Honor, of course. I know who it applies to. I'm asking is it undisputed then that they had knowledge once they received the feedback about whether you want to call it false IDs or non-match? Matching information, whatever it was. If there was particular feedback that made it back to New Star itself, then you can accuse knowledge. Is there a dispute about whether it made it back to New Star? I believe that's a question of fact. What's the dispute? It would be in dispute. What is the dispute? The dispute specifically is what New Star knew and when they knew it. Who from New Star testified that they didn't receive that? I believe Anthony Nunes. I believe that's in his deposition, Your Honor, and I'll look at that as well. Look at it. I mean, this has been briefed. I don't want any supplemental brief. I understand the court on that particular question. I'll get you a record citation. Well, I really thought that that part of it was undisputed. I didn't think the appellate was really disputing this part of the case. I'll give you an example. I see in the record there's an employee that presented a permanent resident card that stated that it had expired almost three years before the date of hiring. Am I wrong? Is that? So that would be. I thought the appellate actually had really conceded this part of it, that there was, under the applicable statute and regulations, there was the knowing employment of these individuals with false on those records that it happened. Your Honor, there is no doubt. Yes, there is no doubt that there are a handful of employees where records did not match up. The question really becomes what the New Star appellants could have done under the law about going further to verify them and whether they actually had that actual knowledge. That's the only matter in dispute on that issue. I see that. If the records don't match up, isn't that under the law, isn't that the knowing use of undocumented labor? It is. I mean, how can you claim that it's not if the records don't match? In the plain language of knowingly, trying to suggest that they knew individuals had this information and that they knew that they had undocumented laborers working for them. The issue is falsity, right? Yes, Your Honor. Under libel law. Yes, Your Honor. And so you're saying that it was false because it's not established that your client could have verified. What nonsense. I understand the court's position on that. What we are simply saying is that when a paper says that you knew that you hired someone who was an undocumented immigrant, that that is that you have to prove that they actually knew it beforehand. I understand the court's position on that when it comes to the new star appellants. My time has expired. Very well, then. Thank you for your argument. Thank you. Mr. Dunn-Allen, we'll hear from you. Good morning. Chief Judge Collin, and may it please the Court. There's a lot of issues that are on the table and multiple ways in order to affirm the district court's judgment below. Multiple ways to reverse, too. I'd like to focus on the Congressman's claim in the first instance because there's a significant concession that was made in the reply brief, which is the application of California law, which had been disputed for some time. And there's two issues of California law which are dispositive and that have not been argued much at all. And the first one is the failure of the Congressman to adhere to the California Retraction Statute, California Civil Code 48A. And that, as the district court appropriately found, had been waived because it had been fully briefed on summary judgment and there was no opposition at all to that. There was no argument at all made that it didn't apply or that it was complied with or that the Congressman had met the requirement under that statute of pleading and proving special damages. Why is that dispositive? Because under California law, Your Honor, that statute, if you don't make a retraction demand, a timely retraction demand limits you to special damages. Right. Okay. That's an issue. I see them here, frankly. And I'd like to walk you through that, if I may, because it's defined under the statute. Your Honor, you said there were two issues of California law that were dispositive. You've identified one that I don't think is dispositive. So what's the second one? The second one is the one that you were just speaking with with opposing counsel, which is the republication issue. But before I turn to that, Your Honor, on the special damages issue, I would direct you. Go ahead on special damages. What's your argument there? Thank you, Your Honor. I would point the Court to the case Nunez v. CNN, which was decided by the Second Circuit. It's cited in our brief at page 22 for the application of California law. But the actual disposition of that case was to grant a motion to dismiss because the California retraction statute had not been met and there was and the Congressman in that case had not pled special damages. Special damages is specifically defined under the statute. It's limited to property, trade, business, profession, or occupation. And the courts say that it has to be pled with specificity. Now, here is the district court held. There was no accounting that was done. There was no formula that was done. There was no damages expert. What he has claimed here is $75 million of general damages. And those are defined under the statute as well and are not available to him. They're defined under the statute as loss of reputation, shame, mortification, and hurt feelings. All of the damages that he has claimed fall under that category. The two things that he pointed to in the reply brief, which is essentially trying to recast now that they've acknowledged California law applies, damages as special damages are diminished professional opportunities. And this is at the reply of page 13. But there are none cited. And it doesn't meet the specificity requirement of California law. In fact, if you look at the Gomes case, which is cited in our brief, it says that general allegations of loss of prospective employment are not sufficient. But this is a summary judgment ruling, right? Or is it 12-6? Summary judgment. Summary judgment. Yes, Your Honor. It's leadings don't control summary judgment. The retraction statute specifically says it has to be pled and proven. And if you don't do either, it can be dismissed either at the motion to dismiss stage or the summary judgment stage. What page says you have to do both if it gets to summary judgment? Your Honor, I would point to the cases that we cite in our brief at pages 41 to 43. If you run out at this point, please. I'd look at Trendmood and O'Hara. And I would also point to, again, the Nunez v. CNN case. It's a strict provision of California law. And on this record, dismissal is warranted on that basis. You're saying diminished professional opportunities could qualify as special damages, but you say he didn't put evidence of any lost opportunities? That's correct, Your Honor. He doesn't cite any professional opportunities. He doesn't he declines to name any in his deposition. He doesn't cite any in his declaration. There's none in the record whatsoever. What we do know is that the other thing that he points to is lost corporate donors. Now, when he was sitting as Congressman, he doesn't specify, again, he doesn't specify who and he doesn't specify why he lost those corporate donors. What he does admit, though, is that his donations increased by more than two-fold. So his donations actually went up, and he doesn't cite any specific donors that he lost or why he lost them. And, of course, donations would not be his money in any event. And the record on damages, Your Honor, one of the things that it points to very clearly, and this is in the Statement of Undisputed Material Facts reply, point to the appendix at 1074 to 1099, it covers all of his categories of damages and all the evidence there. So you're saying California law is damage to reputation, can't be special damages? That's correct, Your Honor. In what case specifically says that? It's on the face of the statute. It says, and it specifically limits it. If you don't adhere to the retraction statute under California Civil Code 48A, you may not recover general damages which are defined. You didn't follow, you didn't answer the question. I said you're saying California law says damage to reputation of a public servant cannot be special damages. That's correct, Your Honor, because that's loss of reputation. And so where is loss? I haven't read the California law. Are you saying the code defines general damages to include loss of reputation? That's exactly right, Your Honor. And it has a separate definition of special damages? Yes. So the general damages definition is loss of reputation, shame, mortification, and hurt feelings. You may not recover that if you haven't complied with the statute. You're limited to special damages, which is also defined. And that's defined as damages that are alleged and proven with respect to, one, property, business, trade, profession, or occupation, and amounts expended as a result of the alleged libel and no other. So in this case, there has been no specification, and the specification is set forth in the case law that we cite. Trendmood case and the O'Hara case makes clear that if you do not have a specified calculated amount of special damages, that the case should be dismissed. It's not actionable. Your noncompliance with the statute limits you to those damages, and if you don't have those damages, that's a basis to dismiss the claim. All right. On your second point, why couldn't this be a republication? Is there any modern California case law that deals with tweets and the Internet and so forth that would say that what we said in the first opinion would be wrong under California law? There's been no California case since your opinion, Your Honor. The most recent one which was cited is the Penrose Hill case, and that's actually been cited as a correct statement of the law there. Penrose Hill is the latest articulation. What's the rule stated there? It's very clear, and the facts are very analogous. It says that a link is not a republication. Well, this was more than a link, though. The case law. It would acknowledge, I think as this Court was acknowledging, that any content within a new post, that new content would be part of a republication, but the link itself does not republish the content of what it's linking to. So, in other words, in that particular case, it dealt with a blogger who a year and a half later sent out a tweet with a link to his blog and to that blog post, and it was held in that case that the preview of the link was republished, but the entire content of the blog post that you would have to access by clicking on the link was not part of the republication. And the Court rejected precisely the argument that was made here on very similar facts and precisely the argument that they've made also under the Ninth Circuit's Yeager case, which is a republication as to website cases, to say that that would not support their theory. Now, even if one... Why is that correct as a matter of first principles? Your Honor, it's for the... If the subject of the article is denied the material in the first article and then the author comes back and says, I want to spread this further now, why wouldn't that trigger possible liability? Well, Your Honor, the Sundance image case, which we cite in our brief, also deals with precisely that Sundance image, Your Honor, and that deals with precisely that circumstance where there actually was a lawsuit filed and then there was a subsequent link and it was found not to be a republication. What court was that? That was the Southern District of California, also a district court. So the highest court of the state hasn't really weighed in on this problem? It has not, Your Honor, and I honestly believe that that's a reflection of the fact that the law that's spelled out in the Penrose Hill case, which surveys not just the California courts that have looked at this issue, but also other courts around the country, including the Third Circuit, have been uniform in their approach that links themselves are not republications. But even if you were to disagree with that, and I didn't read Nunes 1 to say categorically that links were republications, there's a focus on new audience, and the way I read the case was to give the opportunity to the plaintiffs to go back and to take discovery on that particular question and develop the record, which they did not do. There was no evidence on that, and there still is no evidence as to new audience. What they do, and they point back to their complaint, and this goes to the general approach that has been made here, which is to effectively cling to this Court's decision on a 12B6 motion to dismiss in plausibility. How would you prove a new audience if you're talking about Esquire.com or Liz's personal website or whatever? How would you prove a new audience? Well, Your Honor, you... Your Honor, that, because there's not clear law on this and because none of the cases have found that a link is a new audience, there's not clear case law on this. The lack of a length of time. Almost established prima facie. Yeah. Seeking to attract a new audience. If you were to take a look at the traditional case law, Your Honor... Why couldn't a jury pick up on that? Because under the case law, if you have a run of books... Case law? I mean, you keep talking about cases, and then you come up with a new one, and they're all from non-dispositive courts. That's why I'd like to actually go... We reason. We don't just read lower courts from other circuits. I understand, Your Honor, and that's why I'd like to cut to the chase and say that there is no evidence of a new audience here. I just gave you, what, the evidence. Passage of time. The passage... That's in the record. The passage of time is noted, but it doesn't... It's relevant. If you have books on sale in a bookstore and time passes and they're still being sold, or you have more books that are shipped to the bookstore, it's not a new publication. That's completely distinguishing. Your Honor, you're taking issue... Proximity is a big issue in a lot of areas these days. We keep struggling with the relevance or lack of relevance of proximity by itself. Your Honor, the single... Most of these cases develop, actually, in a statute of limitations context, and the single publication rule has been... is designed specifically to limit those cases. So most of the cases that are applying this law are doing so when there has been a long period of time, like the Penrose Hill case. Give me a case that specifically hones in on the relevance of proximity. Your Honor, I don't know that I can do that. The Penrose Hill case, I would say, would be the closest one. In my remaining time, if I may, I'd just like to touch on two things. Number one, the constitutional issues here. The congressman's burden carries with it a significant constitutional burden of proof at this stage of litigation, which has not been acknowledged, and burdens haven't been met. That goes to falsity and fault. And the most demanding burden, of course, is to actual malice. Now, this court had raised the question in Nunes 1 whether or not the pleaded facts... it stated that the pleaded facts were suggestive enough to render it plausible that Liz had engaged in purposeful avoidance of the truth. Discovery has answered this question of what the impact of the retraction letter and the complaint actually was on Mr. Lizza, and there's no evidence in the record at all after full discovery taken by the congressman who had access to the reporting file, to notes, depositions, and the like, that it did anything to lead Mr. Lizza to believe that the challenged implication is false in any way. And, in fact, the contemporaneous evidence that would show that he didn't even read the complaint or the retraction to deal with the issue of undocumented labor is his tweet the very next day on November 21st, and that's in the record at the appendix 866. There were also some false ad hominem comments directed towards him, which also led him to discount that. As this court knows, mere denials need not be accepted. The Edwards case stands for that. The Space Con case is another one out of the Tenth Circuit which actually denied a motion to dismiss but granted summary judgment because after the evidence, under the clear and convincing evidence standard, found that there was not sufficient evidence of actual malice. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.